UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CYNTHIA COX-FRIETCH,

        Plaintiff

        v.                         Case No.1:10-cv-323-HJW

STATE OF OHIO, OHIO BUREAU OF
WORKER'S COMPENSATION, *et al.*,
                Defendants

## ORDER

This matter is before the Court upon the defendants' "Motion for Summary Judgment" (doc. no. 29), which plaintiff opposes. On February 1, 2012, this Court held a hearing at which the parties, through counsel, presented oral arguments. Having carefully considered the entire record, including the pleadings, briefs, exhibits, and oral arguments, and there being no genuine dispute of material facts in this case, the Court will <u>grant</u> the defendants' motion for summary judgment for the following reasons:

## I. Background

On May 20, 2010, plaintiff Cynthia Cox-Frietch filed a three–count complaint against her former employer, the State of Ohio Bureau of Workers Compensation ("BWC") and her former supervisor Patricia Harris in her official capacity. Plaintiff's complaint alleges violation of her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Specifically, plaintiff alleges "interference" with her FMLA rights under 29 U.S.C. § 2612(a)(1) and "retaliation" in violation of 29 U.S.C. § 2615(a)(2)). Plaintiff attaches numerous exhibits to her complaint, which

document the various progressive disciplinary actions taken against her, including her removal from employment. Plaintiff seeks damages, interest, reasonable attorneys fees, and liquidated damages (doc. no. 1 at ¶¶ 43, 48). She also requests "an order against defendants for such equitable relief as may be appropriate including employment at another location, reinstatement, and/or an order prohibiting future harassment against plaintiff in violation of the law as provided under 29 U.S.C. § 2617(a)(1)(B)" (¶ 52).

The relevant material facts of this case are undisputed. Those facts have been set forth in considerable detail in the briefs and will be summarized as succinctly as possible. Plaintiff was employed at the BWC for nearly twenty years and worked as a manager from 2004 until her termination on April 19, 2010 (doc. no. 1 at ¶¶ 7-8). In plaintiff's October 2007 annual performance review, her supervisor, Steve Dyer, indicated that plaintiff was "below target" in several areas: (1) the requirement that she attend at least one field visit each quarter with each of the employees she supervised; and (2) assisting her staff to meet their work expectations each quarter. Overall, he rated her work as satisfactory.

In May of 2008, the BWC's Governor's Hill office began changing its operations to better merge the business side with the claims side, and management from both sides began meeting regularly (Cox-Frietch Dep. at 40). When a manager from the "claims side" told plaintiff (from the "business side") that plaintiff's staff was not meeting their goals and that plaintiff should write them up, plaintiff refused (Id. at 44). Plaintiff's new supervisor, Patricia Harris joined the discussion, and

according to plaintiff, she and plaintiff "went back and forth a little bit," with Harris telling her "you will write your people up" and plaintiff insisting "No, I won't." (Id. at 44-45).

Later that year, plaintiff received her October 2008 annual performance review which reflected that she had still not remedied her deficient areas and that her "team continues to struggle." Plaintiff was again deemed "below target" for working with her staff to meet their performance expectations. Plaintiff acknowledges that some of her employees were struggling with the goals set for them (Cox-Frietch Dep. at 61). Her 2008 evaluation noted that in three of four quarters (October 2007 – October 2008), plaintiff had failed to conduct at least one field visit with each of the 6-7 employees she was supervising (Plaintiff's Ex. 2 at 4). The evaluation also indicated that plaintiff's supervisor (Harris) had asked plaintiff to use a spreadsheet to track field visits and the completion of employee management analysis forms for each visit, as a way to provide staff with feedback and recommendations for improvement. (Id.). Plaintiff did not keep track of this information. As plaintiff had shown "no significant improvement" since her previous annual review, plaintiff's overall performance was rated as "unsatisfactory." Consequently, plaintiff was placed on a performance improvement plan and did not receive a "step" increase in pay.

On October 14, 2008, plaintiff was given an oral reprimand by her supervisor (Plaintiff's Ex. 3). Essentially, plaintiff had failed to stop an employee in the workplace from being loudly critical and disruptive. Harris' reprimand indicated "As a member of the management team, I expect a higher level of professionalism. The

behavior exhibited on October 2nd and 3rd was unacceptable behavior for a leadership staff member of this office and will not be tolerated." (Id.).

On January 5, 2009, BWC employee Don Urbansok, who was supervised by plaintiff, filed an internal EEO complaint against her, essentially for favoritism towards others while neglecting him, which he attributed to age discrimination. EEO manager Sheri Fitzpatrick investigated and found no probable cause to believe that Urbansok was a victim of age discrimination. The investigation did reveal that another employee (Yvette Smolinski) under plaintiff's supervision was also not meeting her EMPE goals and had not been placed on a performance improvement plan (Fitzpatrick Aff. ¶ 4, Ex. A, pp. 3-4). Fitzpatrick advised that "the management personnel in the Governor's Hill Service Office should properly monitor an employee's performance deficiencies and if necessary place them on an action plan in order to demonstrate that their policies are applied equally to all and avoid the appearance of favoritism" (Id.). Fitzpatrick personally spoke with plaintiff on February 13, 2009, and March 2, 2009, about the need to properly monitor staff performance deficiencies and to apply policies equally to all staff in order to avoid the appearance of favoritism (Id. ¶ 5, Ex. B).

On March 24, 2009, Cox-Frietch received a letter from the Administrator for BWC, Marsha Ryan, notifying her that she was being suspended for three-days for failing to follow the terms of her performance improvement plan from October 2008. (Cox-Frietch Ex. 11). The letter noted that the plan had instructed her to monitor and follow-up with her staff on their performance issues. (Id.). Plaintiff's failure to do so,

and her failure to properly implement, administer and monitor Urbansok's performance under his 2008 plan had led to Urbansok's complaint to the EEO about plaintiff's alleged discrimination. The suspension letter warned plaintiff that "[c]ontinued behavior of this type will result in the imposition of stronger disciplinary action, up to and including your removal." At her deposition, plaintiff acknowledged that this suspension related to her October 2008 performance improvement plan and Urbansok's age discrimination complaint, rather than any use of her FMLA leave (Cox-Frietch Dep. 11,118; see also, Fitzpatrick Aff. Ex. A).

Meanwhile, in February of 2009, plaintiff's mother became seriously ill (¶ 11). On February 14, 2009, plaintiff obtained an FMLA certification for intermittent leave in order to care for her mother. Plaintiff requested, and was granted, approximately seventy (70) hours of intermittent FMLA leave over the next two months (¶¶ 12-13). It is undisputed that plaintiff was granted all the FMLA leave that she requested. Pursuant to the statutory provisions of the FMLA and BWC policy, the BWC substituted paid sick leave for the unpaid FMLA leave. 29 U.S.C. § 2612(d)(2)(B). Plaintiff's mother unexpectedly passed away on March 25, 2009.

Although plaintiff no longer needed FMLA leave to care for her mother, plaintiff continued to use her sick leave as she accrued it. By June of 2009, plaintiff's accrued sick leave had dropped to a low level. Pursuant to BWC policy and Section 123:1-32-05(B) of the Ohio Administrative Code, plaintiff was notified in writing that she was being placed on Physician Verification ("PV") status. Employees on PV status must provide their employer with written verification of the

reason for sick leave, i.e a doctor's note (doc. no. 1, ¶¶ 15-16). Pursuant to BWC policy, a supervisor may require the employee to stay on PV status until the employee has accrued thirty (30) hours of sick leave. Plaintiff was familiar with this policy, as she had placed other employees on it. The BWC's notice to plaintiff expressly advised that "failure to follow this direct order will be a violation of the BWC work rules, and you will be subject to discipline" (Ex. A, Notice, June 5, 2009).

On July 29, 2009, plaintiff received a letter from BWC Administrator Marsha Ryan advising that plaintiff was being suspended for again failing to supervise her staff, despite repeated direction from the BWC's EEO Manager and her immediate supervisor (Plaintiff's Ex. 12). She was given a five-day working suspension, from August 3 - 7, 2009, for failing "to adequately supervise staff" and for being "insubordinate" in disregarding repeated directions to treat her staff in a similar manner when dealing with accountability for performance measures (Ex. C).[1]

Another disciplinary matter occurred the following year, but was unrelated to plaintiff 's previous failures to supervise staff. On January 20, 2010, plaintiff called in sick. Although she contends that she mentioned two reasons: her son's stomach virus and her own afternoon appointment for treatment of bursitis (Cox-Frietch Dep. 145, 148), her supervisor's secretary recorded only one reason, i.e. that plaintiff reported her son was ill. Plaintiff, who was on PV status, did not provide a doctor's note for her son's illness, and therefore, the absence was "unexcused." Plaintiff

---

[1]Plaintiff was given notice of the charges (doc. no. 1, Ex. B). Plaintiff, with her attorney present, was also given a predisciplinary conference with BWC Labor Relations Manager, Brad Nielsen.

contends that she later offered a doctor's note from her own hip therapy session, but it was rejected because it was inconsistent with the stated reason for the absence. On February 18, 2010, the BWC informed her in writing that disciplinary action was contemplated against her for "unexcused absence/using more leave than available" and "insubordination" (doc. no. 1, Ex. D).  A pre-disciplinary conference was held, and although the next step on BWC's disciplinary grid allowed for removal, plaintiff was given a lesser fine of "five days" and a warning that continued behavior of this type could result in removal (Ex. E).

On March 3, 2010, plaintiff was involved in a workplace incident that apparently escalated into loud yelling.  Plaintiff disapproved of the improper way an employee (Margie Price) had answered the telephone ("Hello" instead of a more professional greeting).  After plaintiff spoke with Price's supervisor, Price and plaintiff went out into a corridor, and  according to plaintiff, Price began yelling at her loudly.   Price's supervisor came and told Price to return to her work area, and plaintiff told another employee to "mind her own business."  On March 10, 2010, supervisor Patricia Harris informed plaintiff that a pre-disciplinary hearing was being scheduled on March 3, 2010 regarding plaintiff's behavior in this incident.  Plaintiff responded by forwarding a letter from her attorney, dated March 16, 2010, which contended that the defendants' attempt to discipline her amounted to "retaliation" in violation the FMLA (doc. no. 1, Ex. F).  As part of this disciplinary process, the BWC advised plaintiff in writing on March 29, 2010, that it was contemplating her removal under the progressive disciplinary guidelines for several reasons: 1) neglect

of duty – failure to adequately perform a supervisor/managerial function;  2) failure of good behavior - general;  and 3) failure of good behavior- discourteous and/or rude treatment of a fellow employee, manager, or customer (¶ 30; Ex. G).  A meeting was set to allow plaintiff to tell her side of the incident, with her counsel present.

Afterwards, plaintiff was informed by letter on April 16, 2010, that she was "found in violation of the provisions of the BWC Disciplinary Policy and Grid" and was being removed from her position as "Employer Management Supervisor," effective April 19, 2010 (doc. no. 1, ¶ 33;  Exhibit "H").  Specifically, the letter explained that on Wednesday, March 3, 2010, "you precipitated and/or participated in several different incidents that were disruptive to the Information Management work area and/or Governor's Hill Service Office.  Your behavior was very inappropriate for member of management" (Ex. H).

In her present federal complaint, plaintiff asserts that the defendants' actions "in disciplining, suspending, fining and terminating" her violated the FMLA (¶ 34). After discovery, defendants moved for summary judgment (doc. no. 29) and filed "Proposed Findings of Fact and Conclusions of Law" (doc. no. 30).  After being granted several extensions of time, plaintiff filed a response brief (doc. no. 35) and her highlighted version of the defendants' proposed findings (doc. no. 36). Defendants filed a reply, and on January 26, 2012, filed a notice of supplemental authority (doc. no. 46).  The parties' counsel presented oral arguments at the hearing on February 1, 2012.  At the hearing, plaintiff's counsel confirmed that plaintiff was

withdrawing Count Three.[2]  This matter is fully briefed and ripe for consideration.

## II.  Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides in relevant part:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.  Fed.R.Civ.P. 56(c)(1).

Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (l986).  The district court must construe the evidence and draw all

---

[2]Given the well-settled law on this subject, plaintiff had indicated in her brief that she did "not oppose the dismissal of any claims relating to FMLA for herself" (doc. no. 35 at 61, fn. 21). The Eleventh Amendment bars the plaintiff from obtaining damages from the state for violation of the FMLA self-care provision.  <u>Algie v. Northern Kentucky University</u>, Slip Copy, 2012 WL 34373, *6 (6th Cir. (Ky.));  <u>Touvell v. Ohio Dept. of Mental Retardation & Dev. Disabilities</u>, 422 F.3d 392, 405 (6th Cir. 2005).

reasonable inferences in favor of the nonmoving party.  <u>Id</u>. at 587.  In doing so, courts must distinguish between evidence of disputed material facts and disagreement as to the legal implications of those facts.

Essentially, the court must determine whether the evidence presents a sufficient dispute of material fact so as to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 251-52 (1986).  A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." <u>Id</u>. at 248.  A mere scintilla of evidence in support of a party's claim is insufficient to survive summary judgment, as there must be enough evidence that a jury could reasonably find for the party.  <u>Id</u>. at 251.

<u>III.  Discussion</u>

<u>A. Relevant Law</u>

The FMLA requires covered employers to provide up to twelve weeks of leave during any twelve-month period to employees who, because of a serious health condition, are unable to perform the functions of their job.  29 U.S.C. § 2612(a)(1)(D). The FMLA provides for two types of violations: entitlement (also referred to as "interference") and retaliation (referred to as "discrimination").  <u>Hoge v. Honda of Am. Mfg., Inc</u>., 384 F.3d 238, 244 (6th Cir. 2004);  <u>Arban v. West Publishing Corp</u>., 345 F.3d 390, 400 (6th Cir. 2003).  Plaintiff alleges both types of claim here.

Under the "entitlement" (or "interference") theory, the FMLA makes it unlawful

for an employer to interfere with an employee's substantive FMLA right to medical leave or to job reinstatement following FMLA leave. <u>Arban</u>, 345 F.3d at 401; 29 U.S.C. § 2615(a)(1) (providing that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title"). The regulations provide that this includes "discouraging an employee from using [FMLA] leave." 29 C.F.R. § 825.220(b).

Under the "retaliation" (or "discrimination") theory, the FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title." 29 U.S.C. § 2615(a)(2); see also, 29 C.F.R. § 825.220(c) (explaining that employers may not "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions").

## B. Plaintiff's Entitlement/Interference Claim

For an "entitlement/interference" claim, the Court of Appeals for the Sixth Circuit has explained that "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA – for example, a twelve-week leave." <u>Arban</u>, 345 F.3d at 401. To establish a prima facie case under this theory, a plaintiff must show that: (1) she was an eligible employee, (2) the defendant was an employer as defined by the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take FMLA leave, and (5) the employer denied the employee FMLA benefits to which she was entitled. <u>Edgar v. JAC Prods., Inc.</u>, 443 F.3d 501, 507 (6th Cir. 2006); <u>Cavin v. Honda of Amer. Mfg.</u>, 346 F.3d 713, 719

(6th Cir. 2003). The employee must establish these elements by a preponderance of the evidence. <u>Wysong v. Dow Chemical Co.</u>, 503 F.3d 441, 447 (6th Cir. 2007); <u>Sorrell v. Rinker Materials Corp.</u>, 395 F.3d 332, 335 (6th Cir. 2005).

The first four steps are not disputed. Only the fifth step is in contention here, i.e. whether the BWC denied plaintiff any FMLA benefits to which she was entitled. Defendant points out that it is undisputed that defendant <u>granted plaintiff all the FMLA leave she requested</u>. In fact, plaintiff acknowledged at deposition that she was not denied any FMLA leave or dissuaded in any way from taking FMLA leave to care for her mother (Cox-Frietch Dep. at 99). The BWC even provided for other employees to donate additional leave for plaintiff to use.

If a plaintiff has failed to establish an element of her case and there is no factual dispute regarding that element, then summary judgment in favor of the defendant is appropriate. "Summary judgment for a defendant is appropriate when a plaintiff fails to make a sufficient showing to establish the existence of an element essential to her case on which she will bear the burden of proof at trial." <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 805-06 (1999). Based on the undisputed material facts before the Court, the BWC did not "deny" plaintiff any FMLA leave or dissuade her from taking any. Simply put, plaintiff was not deprived of any FMLA rights to which she was entitled, and thus, summary judgment for defendants is appropriate on this claim.[3]

---

[3]Defendants have filed a notice of supplemental authority (doc. no. 46) drawing this Court's attention to a recent case, <u>Donald v. Sybra, Inc.</u>, --- F.3d ----, 2012 WL 117613 (6th Cir. Mich. 2012). There, the Court of Appeals for the Sixth

Although she acknowledges that she was granted all the FMLA leave that she requested, plaintiff argues that her subsequent placement on Physician Verification ("PV") status on June 5, 2009 constituted "interference" with her FMLA rights. This contention is without merit. In the first place, plaintiff's placement on PV status occurred long <u>after</u> plaintiff had requested, and been granted, FMLA leave to care for her mother. Thus, her argument is backwards, i.e. the subsequent PV status could not have affected her <u>prior</u> use of FMLA leave. After she was later placed on PV status, she did not request any FMLA leave or provide certification for any other serious medical condition. She has not shown that she was "dissuaded" from requesting FMLA leave. Her placement on PV status pursuant to BWC policy did not restrict her right to FMLA leave and simply does not constitute any sort of FMLA violation. See, e.g., <u>Callison v. City of Philadelphia</u>, 430 F.3d 117 (3rd Cir. 2005) (explaining that city's sick leave policy did not "interfere" with employee's substantive FMLA rights).

To the extent plaintiff suggests that the BWC policy "unlawfully" substituted paid sick leave for unpaid FMLA leave (which reduced her accrued sick leave, and at least in part, eventually led to her subsequent placement on PV status), the FMLA expressly provides that "an employer may require the employee to substitute any of the accrued paid . . . sick leave of the employee . . . for any part of the 12-week period

Circuit took the analysis further and applied burden- shifting to an interference claim. <u>Id</u>. (citing <u>Grace v. USCAR</u>, 521 F.3d 655, 670 (6th Cir. 2008) and <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)). This Court need not reach any burden-shifting analysis because plaintiff has failed to make out a prima facie case at the fifth step.

of such [FMLA] leave." 29 U.S.C. § 2612(d)(2)(B). The BWC's compliance with this statutory provision of the FMLA cannot be construed in any way as "interfering" with plaintiff's substantive right to FMLA leave. Plaintiff's contention is meritless.

Defendants emphasize that PV status merely requires an employee to provide a doctor's note. It does not constitute an "adverse employment action" or otherwise "interfere" with an employee's use of FMLA leave in any cognizable way. This neutral BWC policy merely requires an employee to provide a valid doctor's note in order to verify the purpose of requested sick leave. To be an adverse action, an employment action must be more than a mere inconvenience or minor annoyance. Burlington N. & Santa Fe Ry. Co., v. White, 548 U.S. 53, 68 (2006); and see, e.g., Cecil v. Louisville Water Co., 301 Fed. Appx. 490, 501 (6th Cir. 2008).

Although she was on PV status after June 5, 2009, plaintiff was regularly approved for requested sick leave and other types of leave while she was employed at BWC (Exs. 13, 14, 15). This undermines her argument that placement on PV status was an adverse action that interfered with her entitlement to FMLA leave. Contrary to plaintiff's conclusory allegation, the BWC's requirement that an employee furnish a doctor's note in order to verify the reason for sick leave did not "interfere with" her prior exercise of FMLA rights, nor deter any future potential use of FMLA leave by plaintiff. The doctor's note requirement pertained to sick leave and was separate from (and did not conflict with) any requirement for medical certification relating to plaintiff's FMLA leave in February and March of 2009.

Although plaintiff asserts a claim of "interference" with FMLA rights in Count

One (doc. no. 1, ¶¶ 35-43), she has not shown that she was deprived of any FMLA leave. Instead, she alleges in conclusory fashion that "the defendants interfered with plaintiff's employment and disciplined, suspended, fined and terminated plaintiff in violation of the FMLA" ( ¶ 42). This contention is without merit.

In the first place, plaintiff acknowledged at deposition that her suspension on March 24, 2009 was based on the objective performance deficiencies previously identified in her October 2008 performance improvement plan, rather than her use of FMLA leave to care for her mother (Cox-Frietch Dep. 11,118; see also, Fitzpatrick Aff. Ex. A). Urbansok's EEO complaint against her and the subsequent investigation were based on those same performance deficiencies. This suspension admittedly related to her prior conduct, rather than any attendance issues arising from her use of FMLA leave. The Court of Appeals for the Sixth Circuit has explained that there is no violation "if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." <u>Edgar</u>, 443 F.3d at 508. "An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." <u>Arban</u>, 345 F.3d at 401.

Contrary to plaintiff's conclusory allegation, her employer could certainly discipline and dismiss her for objectively deficient performance, as well as insubordination and other misconduct, even after she took FMLA leave. The regulations anticipate this type of argument and expressly provide that, under the

FMLA, an employee who requests FMLA leave or is on FMLA leave has no greater rights than an employee who remains at work. 29 C.F.R. § 825.216(a) ("An employee lawfully may be dismissed, preventing [her] from exercising [her] statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave.").

In other words, the FMLA does not protect an employee from being terminated for reasons not related to her FMLA leave. Arban, 345 F.3d at 401; and see, e.g., Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 978 (8th Cir. 2005) ("the FMLA's plain language and structure dictates that, if an employer were authorized to discharge an employee if the employee were not on FMLA leave, the FMLA does not shield an employee on FMLA leave from the same, lawful discharge"). Plaintiff cannot use her request for FMLA leave to create a right of continued employment where no such right exists and where disciplinary proceedings were already in progress. See 29 U.S.C. § 2614(a)(3)(B) (an employee who requests FMLA leave is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.").

The Court of Appeals for the Sixth Circuit has carefully explained that the right to non-interference with medical leave is not absolute. Arban, 345 F.3d at 401. "[A]n employee who requests FMLA leave would have no greater protection against . . . her employment being terminated for reasons not related to . . . her FMLA request than . . . she did before submitting that request." Id. (quoting Gunnell v. Utah Valley

<u>State Coll.</u>, 152 F.3d 1253, 1262 (10th Cir. 1998)).  If the employer has a legitimate justification, unrelated to the exercise of FMLA rights, for taking the adverse action, there is no FMLA violation. <u>Edgar</u>, 443 F.3d at 508; <u>Arban</u>, 345 F.3d at 400.  Although plaintiff complains of being disciplined, the progressive discipline imposed on plaintiff was based on her misconduct, not on her use of FMLA leave in February and March of 2009.  Even construing the evidence and drawing all reasonable inferences in favor of plaintiff as the nonmoving party, the plaintiff has not shown that her placement on PV status or the progressive discipline imposed on her amounted to "interference" with her substantive FMLA rights.  Plaintiff has not presented sufficient evidence to establish that she was denied her substantive rights under the FMLA for a reason connected with her FMLA leave. Defendant BWC is entitled to summary judgment on the plaintiff's entitlement/interference claim.

## C.  Plaintiff's Retaliation Claim

The FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title."  29 U.S.C. § 2615(a)(2).  "An employer is prohibited from discriminating against employees ... who have used FMLA leave," nor can they "use the taking of FMLA leave as a negative factor in employment actions." <u>Arban</u>, 345 F.3d at 390;  <u>Skrjanc</u>, 272 F.3d at 314;  29 C.F.R. § 825.220(c). In Count Two,  plaintiff alleges a claim of FMLA retaliation (¶¶ 44-48). She generally contends that "after becoming aware of the plaintiff's opposition to defendant's unlawful practices, the defendants retaliated against her by disciplining, suspending, fining and terminating

the plaintiff" (¶ 47). Plaintiff's position apparently is that her employer's progressive disciplinary policy cannot be applied to her because she took FMLA leave.

To establish a prima facie case of FMLA retaliation, a plaintiff must show that: (1) she engaged in an activity protected by the FMLA, (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; (4) there was a causal connection between the protected activity and the adverse employment action. Killian v. Yorozu Auto. Tenn., Inc., 454 F.3d 549, 556 (6th Cir. 2006) (citing Arban, 345 F.3d at 404); Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 314 (6th Cir. 2001). It is undisputed that plaintiff requested FMLA leave in 2009, that her employer granted the leave, that plaintiff was suspended and eventually terminated under the BWC's progressive discipline policy, and that her termination in April of 2010 was an adverse employment action. The first three steps are not contested, and the parties concentrate their arguments on step four.

Defendants assert that, at the fourth step, there is no causal connection because plaintiff was terminated for reasons entirely unrelated to her use of FMLA leave the previous year. Liability for retaliation will only be found when an employer takes adverse action specifically *because* the employee invokes her FMLA rights. Edgar, 443 F.3d at 508. Here, there is simply no connection between the two. Defendants point out that the plaintiff's well-documented performance problems (which pre-dated her use of FMLA leave) and her own inappropriate behavior (on multiple occasions) resulted in various disciplinary actions that eventually led to her

removal from employment. The mere fact that plaintiff has used FMLA leave in the past does not insulate her from being disciplined for reasons unrelated to her use of FMLA leave. The fact that her counsel sent a letter (dated March 16) to Patricia Harris stating a subjective and conclusory belief that the pending discipline was "in violation of the FMLA" also does not establish any sort of causal connection. Nothing of record suggests that she was disciplined on account of that letter. The evidence merely shows that plaintiff was afforded the opportunity to oppose pending charges with the assistance of counsel. The pending charges against plaintiff were for conduct unrelated to FMLA leave. Defendants correctly assert that plaintiff has produced no significant evidence of a causal link between her use of FMLA leave and her suspensions and eventual termination.

Defendants point out the lack of temporal proximity between the plaintiff's use of FMLA leave in February and March of 2009 and her termination in April 2010. Given that her termination occurred over one year after she last took FMLA leave, any asserted inference of a causal connection due to temporal proximity is minimal at best. Here, there is no close temporal proximity (between the plaintiff's FMLA leave and her termination) that would be sufficient to show any causal connection at the prima facie stage. Temporal proximity between the protected activity and the adverse employment action does not give rise to a finding of causal connection unless "coupled with other indicia of retaliatory conduct." Dixon v. Gonzales, 481 F.3d 324, 333–334 (6th Cir. 2007); Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 737 (6th Cir. 2006). Here, there is none. The fact that plaintiff was suspended

several times does not by itself demonstrate direct evidence of retaliation.

Retaliation claims based on indirect circumstantial evidence are subject to McDonnell Douglas burden-shifting. Skrjanc, 272 F.3d at 313 (citing McDonnell Douglas Corp., 411 U.S. at 792)). If plaintiff makes a prima facie showing, the burden shifts to defendant to demonstrate evidence of a legitimate, non-discriminatory reason for the adverse employment action. Bryson v. Regis Corp., 498 F.3d 561, 570 (6th Cir. 2007). If the defendant does so, the burden shifts back to plaintiff to show that the stated reason is pretextual. Id. Plaintiff may establish pretext by showing that the proffered reasons "(1) have no basis in fact; (2) did not actually motiv[at]e the action; or (3) were insufficient to warrant the action." Staunch v. Continental Airlines, Inc., 511 F.3d 625, 631 (6th Cir.), cert. denied, 555 U.S. 883 (2008).

Even supposing that plaintiff had shown a causal link, and therefore, made a prima facie case, the defendants have articulated legitimate, non-discriminatory reasons for plaintiff's discharge. Defendants assert that the plaintiff was terminated entirely for performance and conduct-related reasons, not her use of FMLA leave. The evidence of record substantiates this. Defendants point out that plaintiff's annual reviews (2007 and 2008) identified several performance deficiencies that continued to be an ongoing problem. These deficiencies occurred prior to any use of FMLA leave by plaintiff, and the BWC adhered to its progressive discipline policy with respect to plaintiff's suspensions and eventual termination.

An employer may fire an employee for poor performance if the employer would have fired the employee for such performance regardless of the employee having

taken FMLA leave.  See, e.g., <u>Lucas v. PyraMax Bank</u>, FSB, 2008 WL 3877297 (7th Cir. 2008) (where the evidence showed that an employee was not adequately performing her job and that her behavior was undermining the workplace, her inability to perform her duties and to interact appropriately with staff provided a legitimate reason for her employer to fire her).  Here, the defendant's stated reasons provide a legitimate, non-discriminatory basis for plaintiff's suspensions and termination.

Under the burden-shifting analysis, plaintiff must demonstrate pretext, i.e., she must point to evidence that would allow a reasonable fact-finder to conclude that defendant's stated reason for her termination "is not the true reason and is simply a pretext for unlawful retaliation."  <u>Bryson</u>, 498 F.3d at 572. In other words, plaintiff "must show that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup."  <u>Coffman v. Ford Motor Co.</u>, Slip Copy, 2011 WL 5865438, *3 (6th Cir. (Ohio)) (quoting <u>Abdulnour v. Campbell Soup Supply Co.</u>, 502 F.3d 496, 503 (6th Cir. 2007)).  Plaintiff has not come forward with facts to support such a conclusion. Although plaintiff suggests that temporal proximity supports her allegation of pretext, "the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext." <u>Sybra, Inc.</u>,  2012 WL 117613; <u>Skrjanc v. Great Lakes Power Service Co.</u>, 272 F.3d 309, 317 (6th Cir. 2001)("temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual").

Although plaintiff disagrees with or insists that the discipline imposed on her

was "unfair," the honest belief rule applies here.  <u>Michael v. Caterpillar Fin. Servs.</u> <u>Corp.</u>, 496 F.3d 584, 598-99 (6th Cir. 2007); <u>Sybra, Inc.</u>, 2012 WL 117613, *5  (applying honest belief rule in context of FMLA retaliation, and reiterating that it is not in the interests of justice for courts to wade into an employer's decision making process). Courts will consider the employer's belief, and whether it is "informed and nondiscriminatory."  The  employer need not have arrived at its decision in the best possible way, rather, it must have "reasonably relied on the particularized facts that were before it at the time the decision was made." <u>Michael</u>, at 599; see also, <u>Majewski v. Automatic Data Processing, Inc.</u>, 274 F.3d 1106, 1117 (6th Cir. 2001).

The  record  reflects  that  plaintiff  not  only  repeatedly  failed  to  properly supervise certain employees, she actually refused to do so.  Insubordination is a legitimate ground for dismissal. <u>Algie</u>, 2012 WL 34373 at *3;  <u>Russell v. Univ. of</u> <u>Toledo</u>, 537 F.3d 596, 609 (6th Cir.  2008).  Additionally, plaintiff refused to follow her supervisor's legitimate requests and displayed a critical attitude toward co-workers in the workplace.  As defendant notes, it was plaintiff's "responsibility to help her subordinates improve their performance, not argue with her supervisor about the method  of  assessment"  (doc.  no.  43  at  4).    Several  disciplinary  actions  against plaintiff were based on conduct that was unprofessional, inappropriate or disruptive, which may certainly constitute legitimate reasons for discharge.  <u>Algie</u>, 2012 WL 34373, at *3;  <u>Lovelace v. BP Prods. N. Am., Inc.</u>, 252 Fed. Appx. 33, 42–43 (6th Cir. 2007).

Plaintiff has not shown that the stated legitimate reasons for her discipline

and eventual removal were pretextual.  She has not shown "that the reasons given have no basis in fact, did not motivate the discharge, or were insufficient to warrant discharge." <u>Heady v. United States Enrichment Corp</u>., 146 Fed. Appx. 766, 770 (6th Cir. 2005); see also, <u>Sybra, Inc</u>., 2012 WL 117613 (affirming grant of summary judgment to employer because plaintiff failed to demonstrate that the employer's justification for termination was pretextual).

## IV.  Conclusion

The defendants have demonstrated the absence of any genuine disputes of material fact in this case.  As there is no genuine issue of material fact as to whether the defendants interfered with plaintiff's FMLA rights or retaliated against her in violation of the FMLA, the defendants are entitled to summary judgment in their favor.

Accordingly, the defendants' "Motion for Summary Judgment" (doc. no. 29) is GRANTED;  this case is DISMISSED at plaintiff's cost and TERMINATED on the docket of this Court.

IT IS SO ORDERED.

_____s/Herman J. Weber_____
Herman J. Weber, Senior Judge
United States District Court
